## PURDON SMITH WHITELEY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 92901, 92902.   Promulgated June 28, 1940.

*Frederick H. Spotts, Esq., A. C. Newlin, Esq.,* and *Robert C. Fluhrer, Esq.,* for the petitioner.

*Brooks Fullerton, Esq.,* for the respondent.

### OPINION.

DISNEY: These proceedings were consolidated for hearing and report and involve the redetermination of deficiencies in income tax in the amounts of $4,226.04, $4,607.88, and $2,770.80 for the respective years 1933, 1934, and 1935. All of the facts were stipulated. The issue is whether all of the income of a trust executed on May 19, 1932, by Beauchamp E. Smith is taxable to petitioner.

On May 19, 1932, Beauchamp E. Smith, a brother of the petitioner, created a trust by transferring to the Western National Bank of York, Pennsylvania, as trustee, 20,000 shares of common stock and 6,000 shares of preferred stock of the Commonwealth & Southern Corporation, seven life insurance policies of the aggregate amount of $225,000, and a note of the petitioner for $250,000. The common stock was represented by two certificates dated in 1930 for 10,000 shares each. The stock was owned by and registered in the name of the petitioner and the certificates were endorsed by her in blank. The preferred stock consisted of two certificates dated in 1930, one for 5,000 shares owned by and registered in the name of the trustor and the other for 1,000 shares owned by and registered in the name

of the petitioner. The certificates were endorsed in blank. The policies of insurance were on the life of the petitioner, with Beauchamp E. Smith as beneficiary, and were issued in 1931 and 1932 on applications made by Beauchamp E. Smith. The note was dated September 22, 1931, was executed under seal, and was payable to Beauchamp E. Smith on demand.

The income of the trust after payment of the expenses of the trust, including premiums on the life insurance policies, was payable to the petitioner for life, and in addition thereto the trustee was directed to pay and deliver to her from time to time, subject to the written consent of the trustor, if living, and if deceased, the trustee, "such further amounts from the principal of this Trust as she shall deem proper and necessary, for her maintenance, support, comfort and enjoyment." Subject to the control and written directions of the trustor and/or the beneficiary, the trustee was authorized to:

1. Vote and exchange the stock.
2. Consent to reorganizations, consolidations, etc.
3. Pay assessments, etc., to protect its interests as holder of the securities.
4. Exercise options and stock rights.
5. Exercise generally all rights lawfully exercisable by any person owning similar property.

Upon the death of the beneficiary all or any part of the net income and principal of the trust was payable to such of her children and in such proportions as she should by her last will appoint. In case of failure of the beneficiary to exercise the power of appointment the entire net income and principal or any balance not appointed was to go in equal parts to her husband and children in a specified manner. Any part or all of the principal of the trust was payable at any time to any beneficiary upon his written application accompanied by the written consent of the trustor, if living, and if not, the trustee.

The beneficiary was authorized to direct the trustee in writing to hypothecate, sell, exchange, or loan the property of the trust to her husband and to such firms or corporations as she should designate and upon such terms as she should designate. The beneficiary was appointed cotrustee of the trust. The trustee had no authority to lease, sell, transfer, invest, reinvest, mortgage, or encumber the property of the trust without the written consent of the cotrustee.

Paragraph ninth of the trust instrument reads as follows:

The Donor expressly surrenders all right and power to amend, modify, or revoke this Trust, and upon the execution of this Indenture no part of the corpus of the Trust property shall be retained by the Donor, and he shall have no power over the disposition or distribution of the principal or the income thereof.

The dividends paid on the preferred stock after the execution of the trust, amounting to $36,000 in 1933, a like amount in 1934, and $22,500 in 1935, were received and reported by the trustee. No income

was realized from the trust from the common stock during the taxable years. During 1932, 1933, and 1934 the petitioner paid interest on the note at the rate of $15,000 per year or 6 percent per annum, and in 1935 paid $7,500 interest on the note. The interest was claimed as a deduction in income tax returns filed by the petitioner and was reported as income by the trust. No premiums were paid on the policies of insurance by the trust in 1932. In 1933, 1934, and 1935 the trustee paid the premiums out of income of the trust estate. The trust paid an income tax on the amounts used to pay insurance premiums and not distributed to any beneficiary. The remainder of the income, less minor deductions, realized by the trust each year was paid to the petitioner, who paid an income tax upon it.

On May 21, 1932, the petitioner executed an instrument transferring to the Western National Bank of York, Pennsylvania, in trust, 10,000 shares of common stock and 5,000 shares of preferred stock of the Commonwealth & Southern Corporation and a note of Beauchamp E. Smith dated February 23, 1932, payable to petitioner, in the amount of $250,000. The common stock was represented by one certificate issued in 1930, owned by and registered in the name of Beauchamp E. Smith and by him endorsed in blank. The preferred stock belonged to the petitioner and was under loan to her husband, who had pledged it as collateral for an account with E. W. Clark & Co., who held the certificates in street names. Pursuant to instructions received by E. W. Clark & Co. on May 27, 1932, the certificates were transferred to the name of the trustee and were delivered to the trustee on June 2, 1932.

The income of the trust, after payment of necessary expenses, including premiums on any life insurance policies held in the trust, was payable to Beauchamp E. Smith for life. Other provisions of the trust respecting withdrawal, disposition, and control of the corpus gave the beneficiary, in all material respects, the same rights as were given the petitioner in the trust created for her benefit by Beauchamp E. Smith.

The dividends paid on the preferred stock from May 21, 1932, to the close of 1935 were received and reported by the trustee. No income was realized during the taxable years from the common stock.

The maker of the note paid as interest thereon $12,833.34 in 1932, $15,000 each in 1933 and 1934, and $7,500 in 1935. He claimed the interest as deductions in income tax returns and the trust reported the amounts as income in its returns. The note has been withdrawn from the trust and has been destroyed.

All of the net income of the trust was paid to and reported by the beneficiary for income tax purposes.

In his determination of the deficiency the respondent taxed all of the income of the Beauchamp E. Smith trust to petitioner on the

ground that the corpus belonged to her prior to the formation of the trust and that she received all of the benefits and controlled the disposition of the principal of the trust. He contends here that petitioner should be regarded as the grantor of the trust; that she had power to revest all of the corpus of the trust within the meaning of section 166 of the Revenue Act of 1932,[1] and that section 167[2] also applies to the income used to pay premiums on the policies of insurance on her life, she having returned as income the amount distributed to her. He also contends that the income of the trust is includable in her gross income within the meaning of section 22 (a).[3] The petitioner concedes that she was the grantor of the trust to the extent of 20,000 shares of common stock and 1,000 shares of preferred stock owned by her prior to the creation of the trust and that she is taxable on the income from the preferred stock used to pay premiums on insurance covering her life. No income was received by the trust on the common stock. Should it be held that the petitioner was and continued to be the owner of the remaining property, namely, the 5,000 shares of preferred stock, the note, and the life insurance?

The situation is similar to that prevailing in *Lehman* v. *Commissioner*, 109 Fed. (2d) 99; certiorari denied, 310 U. S. 637, in which identical cross trusts of a like amount and kind of property were

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where at any time during the taxable year the power to revest in the grantor title to any part of the corpus of the trust is vested—

(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

[2] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.

(a) Where any part of the income of a trust—

* * * * * * *

(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (n), relating to the so-called "charitable contribution" deduction) ;

then such part of the income of the trust shall be included in computing the net income of the grantor.

[3] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after the date of the enactment of this Act, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly.

executed by the decedent and his brother. In holding that the amount of $150,000 which the decedent had power to withdraw from the trusts was properly includable in his gross estate within the meaning of section 302 (d) of the Revenue Act of 1926, the court said: "The fact that the trusts were reciprocated or 'crossed' is a trifle, quite lacking in practical or legal significance", that "The law searches out the reality and is not concerned with the form", and that " 'A person who furnishes the consideration for the creation of a trust is a settlor, even though in form the trust is created by another. Scott on Trusts, section 156.3.' "

In *Helvering* v. *Clifford*, 309 U. S. 331, the grantor declared himself trustee of securities under a short term trust for the exclusive benefit of his wife. The Court held the income of the trust to be taxable to the grantor under the broad terms of section 22 (a), upon the ground, in general, that the trust created no substantial change in the ownership of the property. The Court said: "Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue."

The 5,000 shares of preferred stock were owned by and registered in the name of Smith at the time he created the trust, and as payee he also held petitioner's demand note for $250,000. At the same time petitioner owned a like number of shares of the same stock and Smith's demand note for $250,000. On May 19, 1932, Smith placed the stock and note held by him, together with stock of petitioner (as to which petitioner admits she was the settlor) and the insurance on the life of petitioner in trust for the benefit of petitioner. Two days later petitioner created a trust for Smith's benefit, using 5,000 shares of her own preferred stock, Smith's note, and common stock owned and registered in the name of Smith. In all material respects the terms of the trusts were identical.

The stipulated facts, constituting the only evidence before us, do not specify the consideration given for the notes or directly show the reason or circumstances surrounding their execution. Petitioner argues upon brief that the consideration and occasion for the notes are immaterial, it being enough that petitioner's note, having been executed under seal, is a binding and enforceable obligation, citing *William Park*, 38 B. T. A. 1118. We view the point differently. If an adequate and full consideration in money or money's worth had passed for petitioner's note, obviously there would be less reason to consider the reciprocity in the use of the two notes of like amount in the two trusts and to conclude from the remaining facts that petitioner was the real grantor. Lack of direct proof on the point, as to which the petitioner had the burden, operates against, not for, the petitioner.

The eight insurance policies on the life of petitioner were executed at different times, commencing December 12, 1931. It may be that the note was executed on September 1, 1931, for the purpose of providing income with which to pay the initial premiums. The *Park* case involved deductibility of interest paid on a sealed note delivered as a gift, an entirely different question, and the rule announced therein does not control the question here. The note executed by Smith is not in evidence. It was withdrawn from petitioner's trust and destroyed at a time or times and under circumstances not disclosed by the record. The significant thing is that each note was placed in trust by the payee at approximately the same time for the benefit of the maker. One note offset the other.

The substance of the situation respecting the preferred stock does not differ from that as to the notes. What petitioner lost by the transfer to the trust created by her for Smith's benefit she recovered as beneficiary of Smith's trust.

It thus appears that, with the exception of the insurance policies, which will be discussed later, and the common stock, about which there is no controversy, there was an exchange of notes of a like amount and, in effect, an exchange of like preferred stock for the purpose of creating reciprocal trusts. There appears to be no other motive for the transaction. The fact that there was more stock in the Smith trust than was transferred to the trust executed by petitioner is of no significance. The obvious purpose was to provide income to carry the life insurance on petitioner, there being none on Smith's life in petitioner's trust.

The petitioner contends, however, upon brief that no issue was raised by the pleadings that petitioner should be regarded as the grantor of the trust upon the ground that Smith created the trust in consideration of the formation by petitioner of a similar trust for his benefit and that there was no proof in the record that one trust was created in consideration for the creation of the other.

In her petition petitioner alleges as error the action of the Commissioner in "Taxing the entire income from a trust created by Beauchamp E. Smith to the petitioner, although the entire income was not distributed, or distributable, to the petitioner." In his answer to the petition the respondent denies that he erred in the manner alleged. Under the issue as thus raised the question is the broad one of whether the income of the Smith trust should be taxed to petitioner. The point raised by the petitioner is governed by *Raoul H. Fleischmann*, 40 B. T. A. 672.

We have only the stipulated facts before us and they contain no agreement that the instruments are reciprocal trusts. The petitioner does not specifically deny that they were reciprocal. The burden

was upon the petitioner to show otherwise. In our opinion such showing was not made.

The stipulation of facts does not show the payer of the initial premiums on the insurance policies, although in the preparation of the document provision was made to stipulate the fact. Some of the applications for the policies provide for payment of premiums by Smith, who applied for all of the insurance. Petitioner regards a statement appearing in the opening remarks of counsel for the respondent as an admission that Smith paid the initial premiums. The statement is not reasonably to be considered as intended as an admission of a fact which the parties for an unexplained reason left blank in their stipulation and which is not free from ambiguity and is not in form a solemn admission. The statement does not appear to have been made for the purpose of dispensing with the proof. *Horseshoe Mining Co.* v. *Miners' Ore Sampling Co.*, 147 Fed. 517; 22 C. J. 394. We will not treat the statement as amounting to an admission. It is doubtful whether the point is material, in view of the fact that the insurance was held by Smith as beneficiary at the time he created the trust.

The motive for obtaining the insurance is the pertinent factor. The stipulation contains no direct evidence on the point. In the applications made to the Equitable Life Assurance Society of the United States, the petitioner, in response to a question asking for whose benefit the insurance was desired and what loss the initial beneficiary would sustain in the event of the insured's death, answered as follows: "Brother. Loss on note due him and loss to my estate upon my decease if stock held had to be sold to pay note to brother." This statement of petitioner clearly discloses knowledge by her that the insurance would be assigned by the beneficiary in such a manner as to enable her estate to receive the proceeds in case of her death, for it is obvious that if Smith had retained the note and insurance in their original form he could at any time have demanded payment of the note and would have been entitled to the cash surrender value of the policies prior to the insured's death, and the face amount of the policies upon petitioner's death. The application to another company recites as a reason for the insurance the fact that Smith was petitioner's brother and creditor. It does not appear that petitioner was indebted to Smith under any obligation other than the note for $250,000, the legal effect of which could have been nullified under the terms of Smith's trust.

The policies had been taken out within about five months prior to the execution of the trust instrument and the record does not disclose that any of them had a cash surrender value when they were transferred in trust. If the policies had any value the amount was small

in comparison with the value of the other property. Even if the insurance policies had potential value, they were not income-producing assets and petitioner does not attribute any of the income in controversy to the policies. The inference from the facts is that the primary purpose of the trust was to provide income to pay the annual premiums on the policies. Under the circumstances, we do not think that the presence of the insurance in the trust is of sufficient significance to overcome the finding of the respondent that petitioner was the owner of all of the assets placed in trust. Accordingly, we sustain the determination of the respondent that petitioner should be regarded as the grantor of the Smith trust.

The transfer of the property in trust did not create any substantial change in the dominion and control over the property. The petitioner as beneficiary was entitled to receive all of the income of the trust after payment of expenses thereof, including premiums on the insurance policies. Subject to the written consent of the trustor, she was entitled to distribution of the principal at any time for any purpose. She was not only entitled to appoint corpus by will, but acting alone could direct the trustee to hypothecate, sell, exchange, or loan the principal to her husband or any firm or corporation upon her own terms and the trustee had no power to lease, sell, transfer, invest, reinvest, or mortgage the corpus without her written consent. Such income as was not distributed to petitioner or used to pay other expenses in administering the trust was used to pay premiums on insurance policies subject to petitioner's appointment. Her right to sell corpus to her husband, or any firm or corporation, on her own terms was equivalent to a right to revest at least so much of the proceeds of sale as was less than fair value, her husband being a member of a family unit and there being no restriction against a sale to a corporation wholly owned by petitioner. See *Percy M. Chandler*, 41 B. T. A. 165. Such a power brings the case squarely within section 166, even though the nominal trustor, Beauchamp E. Smith, subject to whose written consent petitioner was entitled to distribution of corpus, is regarded as having a substantial adverse interest.

Did the nominal settlor, however, have a substantial adverse interest? We think not. The petitioner had created a trust for the benefit of the settlor, the terms of which were similar in all material respects to the Smith trust. The effect of the two trusts was, as above held, to make the petitioner the real settlor of the trust ostensibly set up by her brother, leaving him a mere figurehead. He was not a beneficiary of his own trust and had nothing more than a remote interest in its income and principal. His connection with the trust was not enough to constitute a substantial adverse interest. *Mary A. Cushing*, 38 B. T. A. 948; *Henry A. Loeb*, 40 B. T. A. 517; *Fulham* v. *Commis-*

*sioner*, 110 Fed. (2d) 916. Section 166 therefore applies, and the income of the trust must be included in the net income of the petitioner.

Also, we having held that petitioner should be regarded as the grantor of the trust within the meaning of section 166, it follows that so much of the income of the trust as was used to pay premiums on the policies of insurance covering petitioner's life is also taxable to her under the provisions of section 167 (a) (3). *Burnet* v. *Wells*, 289 U. S. 670.

Considering the nature of the trusts, the reservation of dominion and control by petitioner, and lack of reality of the device used to alter the source of the income, the question, in our opinion, is also covered by the ruling of the Court in *Helvering* v. *Clifford, supra.*

Reviewed by the Board.

*Decision will be entered for the respondent.*